UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOHN AND MARY STIERS, )
    Plaintiffs, )
     )
v. ) No. 3:11-CV-437
     ) (Phillips)
STATE FARM INSURANCE, )
    Defendant. )

## MEMORANDUM OPINION

This is a putative class action by which plaintiffs John and Mary Stiers seek to represent "thousands" of State Farm homeowners insured under State Farm replacement cost insurance policies in Tennessee who made claims for storm damage to their homes. Before the court is the motion of State Farm Fire and Casualty Company[1] to dismiss plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6) [Doc. 19]. Plaintiffs have responded [Doc. 21]. Because the Stiers have failed to set forth a plausible claim that they received insufficient funds from State Farm to repair their property, their complaint will be dismissed.

## I. Factual Allegations

The Stiers filed their initial complaint on September 6, 2011. That complaint sought certification of a class of Tennessee purchasers of State Farm homeowners

---

[1] State Farm Fire and Casualty Company has been misnamed by plaintiffs in their First Amended Complaint.

insurance based upon allegations that the putative class members "were denied overhead and profit on the repairs of their homes" and that "State Farm sought to conceal the fact that it was not paying the Stiers and other class members their overhead and profit."  On November 15, 2011, State Farm filed a motion to dismiss the initial complaint.  State Farm argued that the Stiers had failed to state a claim for breach of contract because their complaint did not allege that they spent any more to repair their property than the amount State Farm paid to them for their repairs.  On December 5, 2011, The Stiers filed a motion for leave to file an amended complaint, which was granted by the court on December 21, 2011.  Plaintiffs filed their First Amended Complaint on December 22, 2011.  State Farm withdrew its motion to dismiss the initial complaint, and then filed a revised motion to dismiss directed at the First Amended Complaint on January 5, 2012.

The Stiers obtained from State Farm a homeowners insurance policy that "provided for replacement cost for damages to their home."  The Stiers sustained hail damage to their home from an April 27, 2011 storm.  In their amended complaint, the Stiers allege that State Farm made payment for the claim they filed under the policy, but "failed to pay [them] actual cash value (AVC) compensation for overhead and profit (O&P) reasonably likely to have been incurred by the Stiers in having the storm damaged property repaired or replaced."  The Stiers' complaint also asserts that State Farm wrongfully withheld from them monies for what is termed "paid when incurred" (PWI) items in the ACV payment.  The complaint alleges claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, unjust enrichment, injunctive and declaratory relief.

The documents attached to the complaint indicate that the ACV payment that is the focus of the Stiers' allegations was made pursuant to a May 23, 2011 State Farm estimate. The May 23 estimate proposed a $9,363.44 replacement cost value for the necessary repairs and after subtracting the deductible ($1,570) and depreciation ($477.96) from that amount, State Farm made its initial loss settlement ACV payment of $7,315.48. The May 23 estimate advised the Stiers as to the potential availability of payment for O&P. The "Structural Damage Claim Policy" that is the first page of the estimate states:

> Depending upon the complexity of your repair, our estimate may or may not include an allowance for general contractor's overhead and profit. If you have questions regarding general contractor overhead and profit and whether general contractor services are appropriate for your loss, please contact your claim representative before proceeding with the repairs.

The May 23 estimate also advised the Stiers that they should contact State Farm if the repair costs estimated by State Farm appeared to be insufficient: "If your contractor's estimate is higher than ours, you should contact your claim representative prior to beginning repairs." Similarly, another page of the estimate stated: "If you cannot have the repairs completed for the repair/replacement cost estimated, please contact your claim representative prior to beginning repairs."

The May 23 estimate advised the Stiers that they might be eligible to recover an additional $1,275.63 for "PWI for roof tear off and felt." The estimate explained: "Paid When Incurred (PWI) items refer to items, which may not be necessary in the repair of your property damaged by a covered loss. If incurred, or contracted to be completed,

3

reimbursement of reasonable costs will be made up to the maximum amounts identified as eligible for PWI in the estimate."

Less than one month after the May 23 estimate, State Farm prepared a revised calculation of the Stiers' repair costs. This revised calculation concluded that the replacement cost value of the necessary repairs was $12,222.14. Included in the supplemental amount were charges for the roof tear off and felt, which had been designated PWI in the May 23 estimate. Subtracting the deductible ($1,570) from the revised replacement cost value figure resulted in a total amount owed for the damage to the Stiers' home of $10,652.14. State Farm made a supplemental payment to the Stiers for the difference between that amount and the earlier $7,315.48 payment to plaintiffs of $3,336.66. Because this was a replacement cost payment, State Farm made no deduction for depreciation.

The complaint alleges that State Farm's initial estimate failed to account for O&P or PWI in the ACV calculation. The complaint alleges that payment of O&P was required pursuant to the Loss Settlement provision of the Stiers' State Farm Homeowners Policy. That provision states, in pertinent part:

> COVERAGE A – DWELLING
>
> 1.    A1 – Replacement Cost Loss Settlement – Similar Construction.
>
> a.    We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under Section I – COVERAGES,

4

> COVERAGE A. – DWELLING, except for wood fences, subject to the following:
>
> (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the costs to repair or replace the damaged part of the property;
>
> (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;
>
> (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed . . . .

State Farm contends that the Stiers' complaint does not state that plaintiffs' actual repair costs were greater than what they received from State Farm. Nor do they state that they hired a general contractor or are out of pocket for any sums paid to any contractor, much less a general contractor, to complete all necessary repairs. Thus, State Farm asserts that the Stiers are unable to allege any viable claims when they received the full amount to which they were entitled under the contract, and that the First Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. The sufficiency of the plaintiffs' complaint must be assessed in light of the requirements of Federal Rule of Civil Procedure 8 and the Supreme Court's heightening of those requirements under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 570 (2008) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under Rule 8, a pleading "must contain . . . a short and plain statement of the grounds for the court's jurisdiction, [and] . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." F.R.C.P. 8(a)(1)-(2).

When considering a motion to dismiss, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While the court must accept "as true all non-conclusory allegations in the complaint, it does not have to accept unsupported legal conclusions." *Delay v. Rosenthal Collins Group, LLC,* 585 F.3d 1003, 1005 (6th Cir. 2009). In addition, under the heightened pleading requirements adopted by the Supreme Court, the district court must determine whether the complaint pleads a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 679. To be considered plausible, a claim must be more than merely conceivable and the factual allegations "must be enough to raise a right to relief above the speculative level." *Little v. Nationwide Children's Hosp., Inc.,* 2009 WL 4261215, *3 (S.D.Ohio Nov. 25, 2009) (*quoting Twombly,* 550 U.S. at 555*).*

6

Case 3:11-cv-00437-TWP-CCS   Document 27   Filed 06/25/12   Page 6 of 16   PageID #: 399

Even stricter pleading requirements apply to plaintiffs' fraud claim. Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." F.R.C.P. 9(b). To satisfy this requirement, "a plaintiff must, at a minimum, allege the time, place and content of the alleged misrepresentation upon which he relied; the fraudulent intent of the defendant; and the injury resulting from the fraud." *Calipari v. Powertel*, 231 F.Supp.2d 734, 735-36 (W.D. Tenn. 2002).

### III.  Claim for Breach of Contract

The Stiers assert that State Farm breached the contract by not including an estimate for O&P and PWI in calculating the initial ACV payment. Thus, the Stiers argue that they did not receive payment for what they bargained for in the policy.

Although the Stiers claim that State Farm breached the contract by withholding PWI in the ACV payment, the documents attached to their complaint clearly indicate that they received payment for PWI items after the repairs were completed, as the June 21 replacement cost calculation included the costs for the roof tear off and felt. The Stiers focus on the initial ACV settlement loss payment, yet do not dispute the final amount paid was sufficient to cover the amounts they actually spent to complete the repairs to their home. Thus, the Stiers cannot claim a breach of contract relating to the PWI items in the May 23 ACV estimate when they ultimately received payment for those items. *See Hall v. State Farm Mut. Auto Ins. Co.,* 215 Fed. Appx. 423, 430 (6th Cir. 2007) (affirming dismissal of complaint when insured was unable to identify any provision in policy that State Farm

7

supposedly breached); *Raeth v. Nat'l City Bank,* 755 F.Supp.2d 899, 907 (W.D.Tenn. 2010) (plaintiff unable to point to any contractual provision supposedly breached).

Even if there is some dispute with the amount of the ACV payment, such as an alleged failure to include O&P, the actual costs of repair cap the insurer's obligation when a replacement cost adjustment has been made. *See, e.g., Lincoln Fountain Villas Homeowners Ass'n v. State Farm Fire & Cas. Ins. Co.,* 136 Cal.App.4th 999, 1007 (Cal.Ct.App. 2006) ("If the actual cost to repair is less than the actual cash value payment previously received, the insured is not entitled to any additional payment"); *Trinidad v. Fla. Peninsula Ins. Co.,* 2011 WL 1878115 at *2 (Fla.Dist.Ct.App. May 18, 2011) ("Because Trinidad has not hired a general contractor, spent any money for overhead and profit, or become contractually obligated to pay for such costs, payment for a contractor's overhead and profit is not contractually owed by Florida Peninsula under the policy").

Nor does the complaint allege that the final replacement cost payment the Stiers received from State Farm was insufficient to complete the repairs on their property. The loss settlement provision of the policy provides that with respect to a replacement cost payment, State Farm is obliged to pay the insured the amount they "actually and necessarily spend to repair or replace the damaged part of the property." Other courts that have considered the issue have concluded that actual repair costs are the controlling criteria for determining whether the insurer has satisfied its replacement cost payment obligation under the policy. *See, e.g., Volkswagen of Am. Inc. v. Robertson,* 713 F.2d 1151, 1169 (5th cir. 1983) ("Damages may be predicated on estimation only when the loss

8

has not been repaired. If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill"); *Kills v. Aetna Cas. & Sur. Co.,* 503 F.2d 569, 571 (8th Cir. 1974) (holding that insureds were not entitled to replacement cost recovery where they "failed to repair and replace the property and expend an amount in excess of the agreed cash value of the loss"); *Bond v. Am. Fam. Mut. Ins.,* 2008 WL 477873 at *2-3 (D.Ariz. Feb. 19, 2008) ("Having failed to produce any evidence that their repair costs exceeded defendant's actual cash value payment, plaintiffs cannot now obtain additional funds by contending that the actual cash value payment was too low"); *Legacy Condos. Inc. v. Landmark Am. Ins. Co.,* 2008 WL 80373 at *3 (S.D.Miss. Jan. 4, 2008) ("In areas where repairs have been completed, Legacy's estimates of anticipated repair costs are irrelevant . . . . Repairs actually made render estimates for those same repairs irrelevant"); *Matthews v. State Farm Fire & Cas. Co.,* 2007 WL 2127581 at *2 (E.D.La. July 24, 2007) (when repairs are made, damage estimate "does not suffice as evidence of plaintiffs' actual repair expenses"); *Heydari v. State Farm Fire & Cas. Co.,* 2005 WL 3216360 at *3 (Cal.Ct.App. Dec. 1, 2005) ("The fact is, repairs have been made and plaintiffs bear the ultimate burden of showing that those repairs cost more than the amount paid by State Farm").

Here, the Stiers were paid on a replacement cost basis. Therefore, under the loss settlement provision, State Farm's payment obligation is the amount they actually and necessarily spent to complete the repairs. And because under paragraph (2) of Section Coverage A, a supplement payment is calculated as the difference between the ACV payment and the actual repair costs, a full replacement cost payment will render moot any

9

ACV underpayment under paragraph (1). Thus, the Stiers cannot obtain an increase in the net amount to which they are entitled unless they can establish that the full replacement cost payment was insufficient, and to do that, they must allege that their actual repair costs exceeded the amount they were paid. The complaint lacks any allegations that the amount the Stiers received was less than their actual repair costs. As other courts have recognized, the failure to allege facts that could establish an entitlement to O&P is fatal to a claim of breach of contract:

> The court finds that plaintiffs have failed to allege a breach of contract because plaintiffs (1) do not refer to any provision of their insurance policy that entitled them to overhead and profit; (2) do not explain under what circumstances an insured is entitled to overhead and profit; and (3) do not show that plaintiffs meet such circumstances. Not all of defendant's insurance settlements, whether settled on an actual cash value basis or a replacement costs basis, will necessarily include overhead and profit.

*Nguyen v. St. Paul Travelers Ins. Co.,* 2007 WL 3275133 at *7 (E.D.La. Nov. 5, 2007); *see also Edwards v. Allstate Prop. & Cas. Ins. Co.,* 2005 WL 221558 at *3 (E.D.La. Jan. 27, 2005) (dismissing claims that insurer wrongfully failed to pay for O&P when the plaintiff failed "to identity or even allege any facts or circumstances that would demonstrate the need for a general contractor's overhead and profit costs on the specific claim"). Accordingly, because the Stiers have failed to plead any facts demonstrating that they incurred O&P expense which was not paid by State Farm, their claim for breach of contract is **DISMISSED.**

## IV. Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

The Stiers assert that State Farm breached the implied covenant of good faith and fair dealing and that this is part of defendant's breach of contract.

In Tennessee, "parties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract." *Barnes v. Robinson Co. v. OneSource Facility Servs. Inc.*, 195 S.W.3d 637, 642 (Tenn.Ct.App. 2006). However, a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather "may be an element or circumstance of recognized torts, or breaches of contracts." *Upperline Equip. Co. v. J&M, Inc.,* 724 F.Supp.2d 883, 892 (E.D.Tenn. 2009) (quoting *Solomon v. First am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn.Ct.App. 1989)); *see also Pro2Serve Prof'l Project Servs. Inc. v. BWXT Y-12, LLC,* 2009 WL 803104 at *11 (E.D.Tenn. Mar. 25, 2009) ("Notably, a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather may be an element or circumstance of recognized torts, or breaches of contracts"); *Wyndham Vacation Resorts,* 2009 WL 18884058 at *5 (E.D.Tenn. June 30, 2009) (a claim for breach of the implied covenant "is just a part and parcel of the breach of contract claim"). Because the Stiers' claim for breach of the implied covenant of good faith and fair dealing rests upon the same allegations that are the subject of their breach of contract claim, it too, fails for the same reasons discussed above. Accordingly, the claim for breach of the implied covenant of good faith and fair dealing is **DISMISSED.**

## V. Claim For Fraud

The Stiers aver that State Farm used a claim form that led insureds to believe that State Farm was paying O&P when in reality State Farm was not paying O&P.

Under Tennessee law, a plaintiff must allege with particularity all of the elements of a fraud claim in order to survive a motion to dismiss. These elements are (1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact." *Saltire Indus. Inc. v. Waller, Lansden, Dortch & Davis PLLC,* 491 F.3d 522, 526 (6th Cir. 2007) (quoting *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn.Ct.App. 2006)). Under Rule 9(b), a party has the "responsibility of alleging the time, place and content of the alleged misrepresentation, as well as the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *LaPorte v. Countrywide Home Loans, Inc.,* 2009 WL 2905934 at *3 (E.D.Tenn. Sept. 3, 2009) (quoting *United States ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir. 2008)).

Here, the Stiers fail to allege any statements or misrepresentations made by State Farm. Instead, they assert that they were led to believe that line items for O&P where included in the payment they received from State Farm. There is nothing on the face of the documents attached to the complaint that is indicative of fraud or any other wrongdoing. To the contrary, those documents advised the Stiers that O&P could potentially be payable for some claims, and State Farm specifically informed them that if

12

they had any questions regarding O&P, they should contact their claims representative. *See Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 123 (Tenn.Ct.App. 2001) ("Where the plaintiff was invited to inquire, it cannot claim reasonable reliance upon a misrepresentation"). The complaint and supporting documents fail to allege facts indicating that (1) State Farm intended to deceive the Stiers, (2) that the Stiers reasonably relied on any statement State Farm made to them, or (3) that State Farm concealed any fact from them. Nowhere do the Stiers allege in detail how they were misled by State Farm, nor does the complaint explain how plaintiffs relied on any misleading statements and, if they did, how this caused them any damages that are distinct from the alleged breach of contract. The court finds that the complaint fails to plead a fraud claim with the particularity required by Rule 9(b). Accordingly, the claim for fraud is **DISMISSED.**

### VI.  Claim for Unjust Enrichment

The elements of an unjust enrichment claim are (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance of such benefit under such circumstances that it would be inequitable for defendant to retain the benefit without payment of the value thereof. *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). Tennessee courts will impose a contractual obligation under an unjust enrichment theory where there is no contract between the parties or a contract has become unenforceable or invalid and the defendant will be unjustly enriched absent a quasi-contractual obligation. *Thompson v. American Gen. Life & Accident Ins. Co.,* 404 F.Supp.2d 1023, 1029 (M.D.Tenn. 2005).

Here, the complaint asserts that State Farm was unjustly enriched by "not paying the Stiers and the class members O&P, PWI or both." However, the Stiers alleged entitlement to O&P and PWI are governed by the policy. Their complaint does not include any allegations contesting the validity of the insurance contract with State Farm. Given the absence of any dispute regarding the validity of the insurance policy, plaintiffs have failed to state a claim for unjust enrichment. A party cannot recover under an unjust enrichment theory if a valid contract exists. *See Thompson*, 404 F.Supp.2d at 1029. Accordingly, the Stiers claim for unjust enrichment is **DISMISSED.**

### VII.  Request for Injunctive and Declaratory Relief

Because the Stiers have not pleaded any valid cause of action, they have no valid basis upon which to seek injunctive relief. *See Saha v. Ohio State Univ.,* 259 Fed. Appx. 779 780 (6th Cir. 2008) ("Even had Saha properly pled a claim for injunctive relief, it is unavailable when the underlying claims are properly dismissed"). In addition, the Stiers' request for equitable relief is subject to dismissal because they have not alleged that they lack an adequate remedy at law. *See Ferrell v. Addington Oil Corp.,* 2010 WL 3283029 at *10 (E.D.Tenn. Aug. 18, 2010) ("The court agrees with the defendant that plaintiff's complaint, on its face, shows that there is an adequate remedy at law and that plaintiff has not set forth a proper claim for equitable relief in this case"); *Carroll v. Knox County Bd. of Educ.,* 2008 WL 4331424 at *4 (E.D.Tenn. Sept. 17, 2008) ("Because monetary damages will sufficiently compensate plaintiff for any potential liability of the defendants, plaintiff will not suffer from irreparable harm in the event an injunction does not issue"). Accordingly, the Stiers' claim for injunctive and equitable relief is **DISMISSED.**

14

## VIII.  Class Allegations

Finally, the Stiers' class allegations must be dismissed because plaintiffs have failed to state an individual claim. *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 941 (6th Cir. 2004) ("We need not address the district court's denial of plaintiff's motion for class certification because . . . the district court appropriately dismissed the complaint on the merits"); *Rehberger v. Honeywell Int'l Inc.,* 2011 WL 780681 at *9 (M.D. Tenn. Feb. 28, 2011) ("Because the court has dismissed the plaintiff's individual claims . . . the plaintiff cannot maintain those claims on behalf of the putative class").

## IX.  Conclusion

In conclusion, the First Amended Complaint and its exhibits show that the Stiers' insurance claim was ultimately paid on a replacement cost basis, and under those circumstances, State Farm's loss settlement payment obligation under the policy is limited to the amount actually and necessarily spent to complete the repairs.  Plaintiffs have not alleged that their actual repair costs exceeded the payments they received from State Farm.  Therefore, the court finds that plaintiffs have failed to state any claim for which relief can be granted.  Accordingly, State Farm Fire and Casualty Company's motion to dismiss the First Amended Complaint [Doc. 19] is **GRANTED in its entirety**, whereby this action is **DISMISSED WITH PREJUDICE.**

15

Case 3:11-cv-00437-TWP-CCS   Document 27   Filed 06/25/12   Page 15 of 16   PageID #: 408

**ENTER:**

     s/ Thomas W. Phillips
United States District Judge